UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

DAYAMI HERNANDEZ , individually, and DAYAMI HERNANDEZ and JESSICA FERNANDEZ, as Co-Personal Representatives of the Estate of M.A.F.,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

______________________________/

**COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**

The Plaintiffs, DAYAMI HERNANDEZ , individually, and DAYAMI HERNANDEZ and JESSICA FERNANDEZ, as Co-Personal Representatives of the Estate of M.A.F., ("PLAINTIFFS"), by and through their undersigned attorneys, hereby sue Defendant, UNITED STATES OF AMERICA (hereinafter "USA") and allege as follows:

**JURISDICTION, VENUE, AND CONDITIONS PRECEDENT**

1. Plaintiff, DAYAMI HERNANDEZ, is a resident the State of Florida, and resides in Miami-Dade County and is otherwise *sui juris* for this action in the Southern District of Florida.

2. Plaintiff, JESSICA FERNANDEZ, is a resident the State of Florida, and resides in Miami-Dade County and is otherwise *sui juris* for this action in the Southern District of Florida.

3.    Decedent, M.A.F., was a resident the State of Florida, and resides in Miami-Dade County and is otherwise *sui juris* for this action in the Southern District of Florida.

4.    The Estate of M.A.F. has been opened in Miami-Dade County Probate Court and DAYAMI HERNANDEZ and JESSICA FERNANDEZ have been named Co-Personal Representatives of the Estate of M.A.F.

5.    The claims herein are brought against the USA pursuant to the Federally Supported Health Centers Assistance Act of 1992, Public Law No. 102-501, 42 U.S.C. § 233(g)(k), and the amended the Federally Supported Health Centers Assistance Act of 1995, Public Law No. 104-73, 42 U.S.C. §201 provides that the Federal Tort Claims Act Act 28 U.S.C. §1346(b), § 2401(b) and § 2671-80, is the exclusive remedy, for injuries including death, caused by employees of a deemed community Health Center.

6.    Plaintiffs' claim is brought under the theory of medical malpractice, Florida Statutes, Chapter 766.

7.    a. At the time of the alleged medical malpractice, CARLOS ALBERTO RODRIGUEZ, M.D. (hereinafter "RODRIGUEZ, M.D." was an employee of CITRUS HEALTH NETWORK, INC., was acting in the course and scope of his employment, and was a deemed an employee of the United States pursuant to 42 U.S.C. § 233.

b. At the time of the alleged medical malpractice, pursuant to 42 U.S.C. § 2339 (g) CITRUS HEALTH NETWORK, INC. was a Federally Supported Health Center and was a deemed federal employee and eligible for Federal Tort Claims Act coverage.

8.    Venue is proper in that all of the acts and omissions forming the basis of these claims occurred at Palmetto General Hospital in Miami-Dade County in the Southern District of Florida, and arose on or about January 24, 2017.

9. The Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act.

10. This suit has been timely filed, in that Plaintiffs timely served notice of their claim on September 19, 2017 to the U.S. Department of Health and Human Services Office of the General Counsel, 330 C. Street, S.W., Switzer Bldg., Suite 2600, Washington, DC, 20201. The USDHHS assumed responsibility for processing the claim on September 28, 2017, and ultimately denied the claim on February 6, 2018. Additionally, Plaintiffs have completed an extensive pre-suit screening process of the claim in compliance with Florida Statutes §766.106.

11. In abundance of caution, after the death of M.A.F. on April 3, 2018, Plaintiffs timely served a second notice of claims alleging wrongful death damages on June 22, 2018 to the U.S. Department of Health and Human Services Office of the General Counsel, 330 C. Street, S.W., Switzer Bldg., Suite 2600, Washington, DC, 20201. The USDHHS denied the claim on July 12, 2018.

12. The requirements for filing an F.T.C.A. claim were met by the Plaintiffs.

**EVENTS FORMING THE BASIS OF THE CLAIM**

13. On the morning of January 23, 2017 at approximately 8:04 a.m., Plaintiff, DAYAMI HERNANDEZ, was admitted to Palmetto General Hospital for the birth of her son, M.A.F., who was in the 41st week of his gestation period.

14. DAYAMI HERNANDEZ'S pregnancy had been followed by CARLOS ALBERTO RODRIGUEZ, M.D. and CITRUS HEALTH NETWORK, INC. and DR. RODRIGUEZ, M.D. was to be the delivering ob/gyn.

15. At the time of admission, DAYAMI HERNANDEZ was 39 years old, had four

(4) prior pregnancies and she had no listed ante partum risk factors according to the admission records and prenatal records.

16. During the 19 hours prior to M.A.F.'s delivery, CARLOS ALBERTO RODRIGUEZ, M.D. was DAYAMI HERNANDEZ's attending physician and he followed MS. HERNANDEZ with the hospital nursing staff. During that 19 hour period time CARLOS ALBERTO RODRIGUEZ, M.D. ordered cervical ripeners and the delivery drug known as Pitocin which was then administered by hospital's nurses and other hospital employees.

17. In the late evening of January 23, 2017, CARLOS ALBERTO RODRIGUEZ, M.D. left the hospital for approximately 3.5 hours after MS. HERNANDEZ had suffered an anxiety attack. During the period of his departure, MS. HERNANDEZ'S unborn baby began exhibiting a non-reassuring fetal heart rate (FHR). The unborn infant was suffering decelerations which indicated fetal distress and possible hypoxia.

18. CARLOS ALBERTO RODRIGUEZ, M.D. was advised of the FHR at approximately 2:20 a.m. on January 24, 2017, however he did not return to the hospital until approximately 50 minutes later at 3:00 a.m.

19. Additionally, CARLOS ALBERTO RODRIGUEZ, M.D. made no effort to obtain another physician to perform an emergency delivery in his absence.

20. CARLOS ALBERTO RODRIGUEZ, M.D. ultimately arrived back at the hospital and delivered a badly brain damaged baby by Cesarean section at approximately 3:17 a.m. on January 24, 2017, nearly an hour after he was initially advised that the baby was in a life threatening state.

21. Due to decreased blood flow and oxygen to the baby's brain during the above mentioned delay in delivery, the baby sustained severe hypoxic ischemic encephalopathy which caused irreversible brain damage.

22. At 14 months of age, the infant was fed through a peg-tube, could not stand or crawl, had a tracheotomy that required suctioning, he was cortically blind and deaf and he suffered from seizures. The extent of M.A.F.'s brain damage was massive and he required 24 hour nursing care from the date of his birth until his death on April 3, 2018 that was caused by a hypoxic cerebral insult related to his birth injuries claimed in this case.

23. After the delivery, it was determined by Defendant's staff and/or agents that at or near the time of delivery, DAYAMI HERNANDEZ's uterus ruptured and she ultimately underwent an emergency hysterectomy at approximately 4:15 AM on the same day which will prevent her from having any children in the future.

**COUNT I**
**MEDICAL NEGLIGENCE F.T.C.A. SURVIVAL CLAIM AGAINST THE UNITED STATES OF AMERICA FOR THE ACTIONS OF CARLOS ALBERTO RODRIGUEZ, M.D.**

The Plaintiffs reallege and reaver paragraphs 1-23 as if specifically set forth herein.

24. At all times material, Plaintiffs, DAYAMI FERNANDEZ and M.A.F. were patients of Defendant USA, through, CARLOS ALBERTO RODRIGUEZ, M.D., and at that time he was provided medical healthcare and treatment by CARLOS ABLERTO RODRIGUEZ, M.D. As such, at all times material hereto, medical provider/patient relationship existed between CARLOS ALBERTO RODRIGUEZ, M.D. and M.A.F.

25. By virtue of the relationship, the Defendant, USA, through, CARLOS RODRIGUEZ, M.D., owed a duty to Plaintiffs, DAYAMI FERNANDEZ and M.A.F. to provide care and treatment which would comply with the prevailing professional standard of care.

26. Notwithstanding the duty as alleged in paragraph 24 above, the Defendant USA, through, CARLOS ALBERTO RODRIGUEZ, M.D., committed the following acts or

omissions, any of which standing alone would constitute a deviation from the prevailing professional standard of care and a breach of its duties owed to the Plaintiffs:

a.   Negligently and/or carelessly failed to properly manage the second stage of labor and to intervene in a timely manner;

b.   Negligently and/or carelessly failed  to  acknowledge and address decelerations in fetal monitor strips;

c.   Negligently and/or carelessly failed to appropriately discontinue Pitocin in light of the circumstances;

d.   Negligently and/or carelessly failed to perform c-section in light of the circumstances;

e.   Negligently and/or carelessly failed to timely and appropriately treat, evaluate monitor, manage, diagnose and/or assess Ms. Hernandez and her unborn baby.

f.   Negligently and/or carelessly failed to timely and appropriately evaluate, assess, manage, and monitor M.A.F.'s pre-delivery status;

g.   Negligently and/or carelessly failed to timely and appropriately deliver M.A.F.;

h.   Negligently and/or carelessly failed to prevent serious and permanent damages to M.A.F. including but not limited to hypoxic ischemic encephalopathy and the many other resulting sequelae;

i.   Negligently and/or carelessly failed to recognize that the unborn infant was in fetal distress;

j.      Negligently and/or carelessly failed to timely and appropriately monitor, treat, diagnose, evaluate, assess and manage Ms. Hernandez and her unborn infant in a timely manner before, during, and after the delivery;

k.      Negligently and/or carelessly failed to timely and appropriately evaluate, monitor, diagnose, treat, manage and assess the medical condition of Ms. Hernandez and that of her infant child, M.A.F.;

l.      Negligently and/or carelessly failed to recognize that Ms. Hernandez was showing signs and symptoms of fetal distress which required immediate delivery by Cesarean section;

m.      Negligently and/or carelessly failed to perform an immediate Cesarean section when the fetal monitor strips showed fetal distress;

n.      Negligently and/or carelessly failed to recognize that Ms. Hernandez was showing signs and symptoms of fetal distress which required emergency delivery;

o.      Negligently and/or carelessly failed to appropriately and timely deliver Ms. Hernandez's of her infant child, M.A.F.;

p.      Negligently and/or carelessly failed to monitor Ms. Hernandez's infant child, M.A.F.'s status in utero;

q.      Negligently and/or carelessly failed to appreciate fetal distress which presented a danger and threat to the welfare of the infant in utero;

r.      Negligently and/or carelessly failed to appreciate an obstetrical emergency of which there was clear evidence of fetal distress;

s.   Negligently and/or carelessly failed to monitor the status of M.A.F. in utero, from the time that Ms. Hernandez was in the labor and delivery suite up until the baby was actually delivered.

t.   Negligently failed to obtain a back up physician to treat Ms. Hernandez and M.A.F. in CARLOS ABLERTO RODRIGUEZ, M.D.'s absence;

u.   Negligently caused Ms. Hernandez's uterus to rupture;

v.   Negligently and/or carelessly failed to use appropriately and/or discontinue cervical ripeners in light of the circumstances.

y.   Negligently failed to diagnose and treat Ms. Hernandez as a "high risk" pregnancy;

z.   Providing medical services to Ms. Hernandez and M.A.F. in a wrongful manner as described in F.S. Sect. 768.118(6) and F.S. Sect. 768.118(6) ( c).

27.   As a direct and proximate result the negligence and wanton and willful disregard for the rights and human safety of the of the Defendant, USA, through CARLOS ALBERTO RODRIGUEZ, M.D., M.A.F. sustained extensive hypoxic ischemic encephalopathy causing irreversible brain damage, and DAYAMI HERNANDEZ suffered a ruptured uterus.  As such, M.A.F. and his parents DAYAMI HERNANDEZ and MIGUEL FERNANDEZ have suffered and claim any and all available damages under Federal and Florida Law including, but not limited to the following:

A. Damages claimed by M.A.F.;

(1)   For pain and suffering sustained by the minor in the past;

(2)   For loss of capacity for the enjoyment of life sustained by the minor in the past;

(3)   For permanent and total disability sustained by the minor in the past;

(4)    For the loss of the capacity to earn money and/or be gainfully employed, said loss to be sustained by the minor in the future;

(5)    For disfigurement and scarring sustained in the past;

(6)    For mental anguish sustained by the minor in the past;

(7)    For all economic damages sustained on account of the injury to the minor including medical expenses incurred in the past;

(8)    For all other damages provided for and appropriate pursuant to Federal and Florida Law as a result of the injuries sustained by the minor.

B.  Damages claimed by parent, DAYAMI HERNANDEZ:

(1)    Past and future non-economic damages, including but not limited to, mental pain and suffering;

(2)    Past and future loss of filial consortium;

(3)    All economic and non-economic damages associated in any way her ruptured uterus and/or the emergency hysterectomy that resulted in MS. HERNANDEZ's permanent infertility.

C.  Damages claimed by parent, MIGUEL FERNANDEZ:

(1)    Past and future non-economic damages, including but not limited to, mental pain and suffering;

(2)    Past and future loss of filial consortium.

The Plaintiffs, DAYAMI HERNANDEZ, individually, and DAYAMI HERNANDEZ and JESSICA FERNANDEZ, as Co-Personal Representatives of the Estate of M.A.F., demand judgment for the damages listed above against Defendant, USA.

**COUNT II**
**VICARIOUS LIABILITY CLAIM FOR MEDICAL MALPRACTICE SURVIVAL ACTION UNDER FLORIDA STATUTES CHAPTER 766 AGAINST THE UNITED STATES OF AMERICA FOR THE LIABILITY OF CITRUS HEALTH NETWORK, INC. FOR THE ACTIONS OF CARLOS ALBERTO RODRIGUEZ, M.D.**

The Plaintiffs re-adopt and re-allege all allegations above, (paragraphs 1-23) and further alleges as follows:

28. At all times material hereto, CARLOS ALBERTO RODRIGUEZ, M.D., was a physician duly licensed to practice medicine in the State of Florida and held himself out to the public at large and to the Plaintiff, DAYAMI HERNANDEZ and her unborn son, Plaintiff, M.A.F. as a physician skilled in the practice of medicine and in particular in the specialty of obstetrics and gynecology.

29. At all times material hereto, CARLOS ALBERTO RODRIGUEZ, M.D., was employed by CITRUS HEALTH NETWORK, INC. and was treating the Plaintiffs, DAYAMI HERNANDEZ and M.A.F, within the course and scope of his employment with CITRUS HEALTH NETWORK, INC.

30. By virtue of the relationship, the Defendant USA, through, CITRUS HEALTH NETWORK, INC. and CARLOS ALBERTO RODRIGUEZ, M.D., owed a duty to Plaintiffs, to provide care and treatment which would comply with the prevailing professional standard of care.

31. Notwithstanding the duty as alleged in paragraph 30 above, the Defendant USA, through, CITRUS HEALTH NETWORK, INC. and CARLOS ALBERTO RODRIGUEZ, M.D., committed the following acts or omissions, any of which standing alone would constitute a deviation from the prevailing professional standard of care and a breach of its duties owed to the Plaintiffs:

32.     On January 24, 2017, the Defendant USA, through, CITRUS HEALTH

NETWORK, INC. and CARLOS ALBERTO RODRIGUEZ, M.D., committed the following

acts or omissions of negligence, any of which standing alone would constitute a deviation

from the prevailing professional standard of care and a breach of its duties owed to the

Plaintiffs:

    a.    Negligently and/or carelessly failed to properly manage the second stage of labor and to intervene in a timely manner;

    b.    Negligently and/or carelessly failed to acknowledge and address decelerations in fetal monitor strips;

    c.    Negligently and/or carelessly failed to appropriately discontinue Pitocin in light of the circumstances;

    d.    Negligently and/or carelessly failed to perform c-section in light of the circumstances;

    e.    Negligently and/or carelessly failed to timely and appropriately treat, evaluate monitor, manage, diagnose and/or assess Ms. Hernandez and her unborn baby.

    f.    Negligently and/or carelessly failed to timely and appropriately evaluate, assess, manage, and monitor M.A.F.'s pre-delivery status;

    g.    Negligently and/or carelessly failed to timely and appropriately deliver M.A.F.;

    h.    Negligently and/or carelessly failed to prevent serious and permanent damages to M.A.F. including but not limited to hypoxic ischemic encephalopathy and the many other resulting sequelae;

    i.    Negligently and/or carelessly failed to recognize that the unborn infant was in fetal distress;

j.    Negligently and/or carelessly failed to timely and appropriately monitor, treat, diagnose, evaluate, assess and manage Ms. Hernandez and her unborn infant in a timely manner before, during, and after the delivery;

k.    Negligently and/or carelessly failed to timely and appropriately evaluate, monitor, diagnose, treat, manage and assess the medical condition of Ms. Hernandez and that of her infant child, M.A.F.;

l.    Negligently and/or carelessly failed to recognize that Ms. Hernandez was showing signs and symptoms of fetal distress which required immediate delivery by Cesarean section;

m.    Negligently and/or carelessly failed to perform an immediate Cesarean section when the fetal monitor strips showed fetal distress;

n.    Negligently and/or carelessly failed to recognize that Ms. Hernandez was showing signs and symptoms of fetal distress which required emergency delivery;

o.    Negligently and/or carelessly failed to appropriately and timely deliver Ms. Hernandez's of her infant child, M.A.F.;

p.    Negligently and/or carelessly failed to monitor Ms. Hernandez's infant child, M.A.F.'s status in utero;

q.    Negligently and/or carelessly failed to appreciate fetal distress which presented a danger and threat to the welfare of the infant in utero;

r.    Negligently and/or carelessly failed to appreciate an obstetrical emergency of which there was clear evidence of fetal distress;

s. Negligently and/or carelessly failed to monitor the status of M.A.F. in utero, from the time that Ms. Hernandez was in the labor and delivery suite up until the baby was actually delivered.

t. Negligently failed to obtain a back up physician to treat Ms. Hernandez and M.A.F. in CARLOS ALBERTO RODRIGUEZ, M.D.'s absence;

u. Negligently caused Ms. Hernandez's uterus to rupture;

v. Negligently and/or carelessly failed to use appropriately and/or discontinue cervical ripeners in light of the circumstances.

y. Negligently failed to diagnose and treat Ms. Hernandez as a "high risk" pregnancy;

z. Providing medical services to Ms. Hernandez and M.A.F. in a wrongful manner as described in F.S. Sect. 768.118(6) and F.S. Sect. 768.118(6) ( c).

33. As a direct and proximate result the negligence and wanton and willful disregard for the rights and human safety of the of Defendant USA, through, CITRUS HEALTH NETWORK, INC. and CARLOS ALBERTO RODRIGUEZ, M.D., M.A.F. sustained extensive hypoxic ischemic encephalopathy causing irreversible brain damage and DAYAMI HERNANDEZ suffered a ruptured uterus. As such, M.A.F. and his parents DAYAMI HERNANDEZ and MIGUEL FERNANDEZ have suffered and claim any and all available damages under Federal and Florida Law including, but not limited to the following:

A. Damages claimed by M.A.F.;

(1) For past pain and suffering sustained by the minor the;

(2) For past loss of capacity for the enjoyment of life sustained by the minor in the past;

(3)     For permanent and total disability sustained by the minor in the past;

(4)     For the loss of the capacity to earn money and/or be gainfully employed, said loss to be sustained by the minor in the future;

(5)     For disfigurement and scarring sustained in the past;

(6)     For mental anguish sustained by the minor in the past;

(7)     For all economic damages sustained on account of the injury to the minor including medical expenses obtained in the past, and

(8)     For all other damages provided for and appropriate pursuant to Federal and Florida Law as a result of the injuries sustained by the minor.

B. Damages claimed by parent, DAYAMI HERNANDEZ:

(1)     Past and future non-economic damages, including but not limited to, mental pain and suffering;

(2)     Past and future loss of filial consortium.

(3)     All economic and non-economic damages associated in any way her ruptured uterus and/or the emergency hysterectomy that resulted in Ms. Hernandez's permanent infertility.

C. Damages claimed by parent, MIGUEL FERNANDEZ:

(1)     Past and future non-economic damages, including but not limited to, mental pain and suffering;

(2)     Past and future loss of filial consortium.

WHEREFORE, Plaintiffs, DAYAMI HERNANDEZ, individually, and MIGUEL FERNANDEZ, individually, and as parents and natural guardians of M.A.F., a minor, demand judgment for the damages listed above against Defendant, USA.

34. Defendant, USA through CITRUS HEALTH NETWORK, INC., and, CARLOS ALBERTO RODRIGUEZ, M.D. had and undertook the duty to provide the Plaintiff medical care and services in accordance with that level of care which is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

35. By the virtue of the physician/patient relationship identified and alleged above, Defendant, USA through CITRUS HEALTH NETWORK, INC., through CARLOS ALBERTO RODRIGUEZ, M.D., owed a duty to Plaintiffs to provide them with medical care and treatment which would meet or exceed the prevailing professional standard of care.

36. At all times material, Defendant, USA through CARLOS ALBERTO RODRIGUEZ, M.D., provided care and treatment to Plaintiff, and he was acting in the course and scope of his employment for Defendant USA and CITRUS HEALTH NETWORK, INC. As such, Defendant, USA is responsible for Defendant, CARLOS ALBERTO RODRIGUEZ, M.D.'s negligent acts and /or omissions pursuant to *Doctrine of Respondeat Superior.*

WHEREFORE, The Plaintiffs, DAYAMI HERNANDEZ , individually, and DAYAMI HERNANDEZ and JESSICA FERNANDEZ, as Co-Personal Representatives of the Estate of M.A.F., demand judgment for damages listed in paragraph 30 against the Defendant, USA.

**COUNT III**
**MEDICAL NEGLIGENCE F.T.C.A. WRONGFUL DEATH AGAINST CLAIM AGAINST**
**THE UNITED STATES OF AMERICA**
**FOR THE ACTIONS OF CARLOS ALBERTO RODRIGUEZ, M.D.**

The Plaintiffs reallege and reaver paragraphs 1-23 as if specifically set forth herein.

37. At all times material, Plaintiffs, DAYAMI FERNANDEZ and M.A.F. were

patients of Defendant USA, through, CARLOS ALBERTO RODRIGUEZ, M.D., and at that time he was provided medical healthcare and treatment by CARLOS ABLERTO RODRIGUEZ, M.D. As such, at all times material hereto, medical provider/patient relationship existed between CARLOS ALBERTO RODRIGUEZ, M.D. and M.A.F.

38. By virtue of the relationship, the Defendant, USA, through, CARLOS RODRIGUEZ, M.D., owed a duty to Plaintiffs, DAYAMI FERNANDEZ and M.A.F. to provide care and treatment which would comply with the prevailing professional standard of care.

39. Notwithstanding the duty as alleged in paragraph 24 above, the Defendant USA, through, CARLOS ALBERTO RODRIGUEZ, M.D., committed the following acts or omissions, any of which standing alone would constitute a deviation from the prevailing professional standard of care and a breach of its duties owed to the Plaintiffs, DAYAMI FERNANDEZ and M.A.F. :

a. Negligently and/or carelessly failed to properly manage the second stage of labor and to intervene in a timely manner;

b. Negligently and/or carelessly failed to acknowledge and address decelerations in fetal monitor strips;

c. Negligently and/or carelessly failed to appropriately discontinue Pitocin in light of the circumstances;

d. Negligently and/or carelessly failed to perform c-section in light of the circumstances;

e. Negligently and/or carelessly failed to timely and appropriately treat, evaluate monitor, manage, diagnose and/or assess Ms. Hernandez and her unborn baby.

f. Negligently and/or carelessly failed to timely and appropriately

evaluate, assess, manage, and monitor M.A.F.'s pre-delivery status;

g. Negligently and/or carelessly failed to timely and appropriately deliver M.A.F.;

h. Negligently and/or carelessly failed to prevent serious and permanent damages to M.A.F. including but not limited to hypoxic ischemic encephalopathy and the many other resulting sequelae;

i. Negligently and/or carelessly failed to recognize that the unborn infant was in fetal distress;

j. Negligently and/or carelessly failed to timely and appropriately monitor, treat, diagnose, evaluate, assess and manage Ms. Hernandez and her unborn infant in a timely manner before, during, and after the delivery;

k. Negligently and/or carelessly failed to timely and appropriately evaluate, monitor, diagnose, treat, manage and assess the medical condition of Ms. Hernandez and that of her infant child, M.A.F.;

l. Negligently and/or carelessly failed to recognize that Ms. Hernandez was showing signs and symptoms of fetal distress which required immediate delivery by Cesarean section;

m. Negligently and/or carelessly failed to perform an immediate Cesarean section when the fetal monitor strips showed fetal distress;

n. Negligently and/or carelessly failed to recognize that Ms. Hernandez was showing signs and symptoms of fetal distress which required emergency delivery;

o. Negligently and/or carelessly failed to appropriately and timely deliver

Ms. Hernandez's of her infant child, M.A.F.;

p. Negligently and/or carelessly failed to monitor Ms. Hernandez's infant child, M.A.F.'s status in utero;

q. Negligently and/or carelessly failed to appreciate fetal distress which presented a danger and threat to the welfare of the infant in utero;

r. Negligently and/or carelessly failed to appreciate an obstetrical emergency of which there was clear evidence of fetal distress;

s. Negligently and/or carelessly failed to monitor the status of M.A.F. in utero, from the time that Ms. Hernandez was in the labor and delivery suite up until the baby was actually delivered.

t. Negligently failed to obtain a back up physician to treat Ms. Hernandez and M.A.F. in CARLOS ABLERTO RODRIGUEZ, M.D.'s absence;

u. Negligently caused Ms. Hernandez's uterus to rupture;

v. Negligently and/or carelessly failed to use appropriately and/or discontinue cervical ripeners in light of the circumstances.

y. Negligently failed to diagnose and treat Ms. Hernandez as a "high risk" pregnancy;

z. Providing medical services to Ms. Hernandez and M.A.F. in a wrongful manner as described in F.S. Sect. 768.118(6) and F.S. Sect. 768.118(6) ( c).

40. As a direct and proximate result the negligence and wanton and willful disregard for the rights and human safety of the of the Defendant, USA, through CARLOS ALBERTO RODRIGUEZ, M.D., M.A.F. sustained extensive hypoxic ischemic

encephalopathy causing irreversible brain damage, and death and as such, his parents

DAYAMI HERNANDEZ and MIGUEL FERNANDEZ have and will continue to experience

mental and emotional pain and suffering for the rest of their lives and claim any and all

available damages under Florida Law and under Florida's Wrongful Death Statute.

WHEREFORE, DAYAMI HERNANDEZ, individually, and DAYAMI

HERNANDEZ and JESSICA FERNANDEZ, as Co-Personal Representatives of the Estate

of M.A.F., demand judgment for all damages available under Florida Law and Florida's

Wrongful Death Statute including but not limited the damages listed below against

Defendant, USA:

i.      For all compensatory damages sustained by the parents, DAYAMI HERNANDEZ and MIGUEL FERNANDEZ, as a result of the acts or omissions by Defendant, USA;

ii.     For all compensatory damages sustained by the ESTATE OF M.A.F. as a result of the acts or omissions by Defendant, USA;

iii.    For post judgment interest to accrue, subsequent to the entry of any judgment against Defendant, USA;

iv.     For all costs incurred in the prosecution of this cause;

v.      For attorneys fees, in the event and only in the event that Plaintiff becomes entitled to such fees by operation of any proposal for settlement to be propounded herein after; and

vi.     For any further order or decree of the Court, necessary to effectuate any judgment of the Court, or which the Court deems appropriate and just.

vii.    Any and all damages available to the parents, DAYAMI HERNANDEZ and MIGUEL FERNANDEZ and the Estate under Florida's Wrongful Death Act.

41.     Additionally as the result of the aforementioned negligence by Defendant,

USA, through CARLOS ALBERTO RODRIGUEZ, M.D., DAYAMI HERNANDEZ suffered

a ruptured uterus resulting in the loss of her reproductive organs and causing her to suffer

permanent and irreversible infertility.

A. Damages claimed by DAYAMI HERNANDEZ due to loss of uterus and hysterectomy:

(1) For pain and suffering sustained in the past and in the future;

(2) For loss of capacity for the enjoyment of life sustained by DAYAMI HERNANDEZ in the past and in the future;

(3) For permanent and disability sustained by DAYAMI HERNANDEZ in the past and in future;

(4) For the loss of the capacity to earn money and/or be gainfully employed, said loss to be sustained by DAYAMI HERNANDEZ in the future;

(5) For disfigurement and scarring sustained in the past and to be sustained in the future;

(6) For mental anguish sustained by DAYAMI HERNANDEZ in the past and to be sustained in the future;

(7) For all economic damages sustained on account of her injury including medical expenses obtained in the past, medical expense to be obtained in the future, as well as supportive, palliative, rehabilitative, nursing care and treatment to be sustained by the minor for the remainder of his life; and

(8) For all other damages provided for and appropriate pursuant to Federal and Florida Law as a result of the injuries sustained by the minor.

## COUNT IV
## VICARIOUS LIABILITY CLAIM FOR MEDICAL MALPRACTICE SURVIVAL ACTION UNDER FLORIDA STATUTES CHAPTER 766 AGAINST THE UNITED STATES OF AMERICA FOR THE LIABILITY OF CITRUS HEALTH NETWORK, INC. FOR THE ACTIONS OF CARLOS ALBERTO RODRIGUEZ, M.D.

The Plaintiffs re-adopt and re-allege all allegations above, (paragraphs 1-23) and further alleges as follows:

42. At all times material hereto, CARLOS ALBERTO RODRIGUEZ, M.D., was a physician duly licensed to practice medicine in the State of Florida and held himself out

to the public at large and to the Plaintiff, DAYAMI HERNANDEZ and her unborn son, Plaintiff, M.A.F. as a physician skilled in the practice of medicine and in particular in the specialty of obstetrics and gynecology.

43. At all times material hereto, CARLOS ALBERTO RODRIGUEZ, M.D., was employed by CITRUS HEALTH NETWORK, INC. and was treating the Plaintiffs, DAYAMI HERNANDEZ and M.A.F, within the course and scope of his employment with CITRUS HEALTH NETWORK, INC.

44. By virtue of the relationship, the Defendant USA, through, CITRUS HEALTH NETWORK, INC. and CARLOS ALBERTO RODRIGUEZ, M.D., owed a duty to Plaintiffs, to provide care and treatment which would comply with the prevailing professional standard of care.

45. Notwithstanding the duty as alleged in paragraph 42 above, the Defendant USA, through, CITRUS HEALTH NETWORK, INC. and CARLOS ALBERTO RODRIGUEZ, M.D., committed the following acts or omissions, any of which standing alone would constitute a deviation from the prevailing professional standard of care and a breach of its duties owed to the Plaintiffs

46. On January 24, 2017, the Defendant USA, through, CITRUS HEALTH NETWORK, INC. and CARLOS ALBERTO RODRIGUEZ, M.D., committed the following acts or omissions of negligence, any of which standing alone would constitute a deviation from the prevailing professional standard of care and a breach of its duties owed to the Plaintiffs, DAYAMI HERNANDEZ and M.A.F. :

a. Negligently and/or carelessly failed to properly manage the second stage of labor and to intervene in a timely manner;

b. Negligently and/or carelessly failed to acknowledge and address decelerations in

fetal monitor strips;

c.    Negligently and/or carelessly failed to appropriately discontinue Pitocin in light of the circumstances;

d.    Negligently and/or carelessly failed to perform c-section in light of the circumstances;

e.    Negligently and/or carelessly failed to timely and appropriately treat, evaluate monitor, manage, diagnose and/or assess Ms. Hernandez and her unborn baby.

f.    Negligently and/or carelessly failed to timely and appropriately evaluate, assess, manage, and monitor M.A.F.'s pre-delivery status;

g.    Negligently and/or carelessly failed to timely and appropriately deliver M.A.F.;

h.    Negligently and/or carelessly failed to prevent serious and permanent damages to M.A.F. including but not limited to hypoxic ischemic encephalopathy and the many other resulting sequelae;

i.    Negligently and/or carelessly failed to recognize that the unborn infant was in fetal distress;

j.    Negligently and/or carelessly failed to timely and appropriately monitor, treat, diagnose, evaluate, assess and manage Ms. Hernandez and her unborn infant in a timely manner before, during, and after the delivery;

k.    Negligently and/or carelessly failed to timely and appropriately evaluate, monitor, diagnose, treat, manage and assess the medical condition of Ms. Hernandez and that of her infant child, M.A.F.;

l.    Negligently and/or carelessly failed to recognize that Ms. Hernandez was showing signs and symptoms of fetal distress which required immediate delivery by Cesarean section;

m. Negligently and/or carelessly failed to perform an immediate Cesarean section when the fetal monitor strips showed fetal distress;

n. Negligently and/or carelessly failed to recognize that Ms. Hernandez was showing signs and symptoms of fetal distress which required emergency delivery;

o. Negligently and/or carelessly failed to appropriately and timely deliver Ms. Hernandez's of her infant child, M.A.F.;

p. Negligently and/or carelessly failed to monitor Ms. Hernandez's infant child, M.A.F.'s status in utero;

q. Negligently and/or carelessly failed to appreciate fetal distress which presented a danger and threat to the welfare of the infant in utero;

r. Negligently and/or carelessly failed to appreciate an obstetrical emergency of which there was clear evidence of fetal distress;

s. Negligently and/or carelessly failed to monitor the status of M.A.F. in utero, from the time that Ms. Hernandez was in the labor and delivery suite up until the baby was actually delivered.

t. Negligently failed to obtain a back up physician to treat Ms. Hernandez and M.A.F. in CARLOS ALBERTO RODRIGUEZ, M.D.'s absence;

u. Negligently caused Ms. Hernandez's uterus to rupture;

v. Negligently and/or carelessly failed to use appropriately and/or discontinue cervical ripeners in light of the circumstances.

y. Negligently failed to diagnose and treat Ms. Hernandez as a "high risk" pregnancy;

z. Providing medical services to Ms. Hernandez and M.A.F. in a wrongful manner as described in F.S. Sect. 768.118(6) and F.S. Sect. 768.118(6) ( c).

47. As a direct and proximate result the negligence and wanton and willful

disregard for the rights and human safety of the of Defendant USA, through, CITRUS HEALTH NETWORK, INC. and CARLOS ALBERTO RODRIGUEZ, M.D., M.A.F. sustained extensive hypoxic ischemic encephalopathy causing irreversible brain damage and death and as such, his parents DAYAMI HERNANDEZ and MIGUEL FERNANDEZ have and will continue to experience mental and emotional pain and suffering for the rest of their lives and claim any and all available damages under Florida Law and under Florida's Wrongful Death Statute.

WHEREFORE, DAYAMI HERNANDEZ, individually, and DAYAMI HERNANDEZ and JESSICA FERNANDEZ, as Co-Personal Representatives of the Estate of M.A.F., demand judgment for all damages available under Florida Law and Florida's Wrongful Death Statute including but not limited the damages listed below against Defendant, USA:

i. For all compensatory damages sustained by the parents, DAYAMI HERNANDEZ and MIGUEL FERNANDEZ, as a result of the acts or omissions by Defendant, USA;

ii. For all compensatory damages sustained by the ESTATE OF M.A.F. as a result of the acts or omissions by Defendant, USA;

iii. For post judgment interest to accrue, subsequent to the entry of any judgment against Defendant, USA;

iv. For all costs incurred in the prosecution of this cause;

v. For attorneys fees, in the event and only in the event that Plaintiff becomes entitled to such fees by operation of any proposal for settlement to be propounded herein after; and

vi. For any further order or decree of the Court, necessary to effectuate any judgment of the Court, or which the Court deems appropriate and just.

vii. Any and all damages available to the parents, DAYAMI HERNANDEZ and MIGUEL FERNANDEZ and the Estate under Florida's Wrongful Death Act.

48. Additionally as the result of the aforementioned negligence by Defendant,

USA,, through, CITRUS HEALTH NETWORK, INC. and CARLOS ALBERTO RODRIGUEZ, M.D., DAYAMI HERNANDEZ suffered a ruptured uterus resulting in the loss of her reproductive organs and causing her to suffer permanent and irreversible infertility.

A.    Damages claimed by DAYAMI HERNANDEZ due to loss of uterus and hysterectomy:

(1)    For pain and suffering sustained in the past and in the future;

(2)    For loss of capacity for the enjoyment of life sustained by DAYAMI HERNANDEZ in the past and in the future;

(3)    For permanent and disability sustained by DAYAMI HERNANDEZ in the past and in future;

(4)    For the loss of the capacity to earn money and/or be gainfully employed, said loss to be sustained by DAYAMI HERNANDEZ in the future;

(5)    For disfigurement and scarring sustained in the past and to be sustained in the future;

(6)    For mental anguish sustained by DAYAMI HERNANDEZ in the past and to be sustained in the future;

(7)    For all economic damages sustained on account of her injury including medical expenses obtained in the past, medical expense to be obtained in the future, as well as supportive, palliative, rehabilitative, nursing care and treatment to be sustained by the minor for the remainder of his life; and

(8)    For all other damages provided for and appropriate pursuant to Federal and Florida Law as a result of the injuries sustained by the minor

DATED this 10th day of January 2019.

MALLARD & SHARP, P.A.
Attorney for Plaintiffs
7700 N. Kendall Drive, Suite 303
Miami, FL 33156
Tel: (305) 461-4800
Fax: (305) 397-2557
Email: bo@mslawcenter.com
Secondary: sally@mslawcenter.com

BY: */s/ Richard B. Sharp*

RICHARD B. SHARP
Fla. Bar No.: 0269890